# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| SUNFLOWER REDEVELOPMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-CV-00577-DGK |
| | ) | |
| ILLINOIS UNION INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING IN PART PLAINTIFF'S MOTION TO EXCLUDE

After insurer Defendant Illinois Union Insurance Co. ("ILU") refused to indemnify Plaintiff Sunflower Redevelopment, LLC ("Sunflower"), Sunflower sued for declaratory judgment and breach of contract.

At the parties' request, the Court agreed to separate the litigation of this case into two phases (Doc. 29). The issue in Phase I was whether certain pollution conditions within particular areas of the Plant were excluded from coverage under a Premise Pollution Liability ("PPL") insurance policy. The Court found none of the endorsements to the PPL policy excluded coverage for these particular costs. *See* (Doc. 65). Phase II consist of all other issues to determine whether ILU has a duty to defend and indemnify Sunflower under the PPL policy.

Now before is Sunflower's motion to exclude certain testimony of ILU's expert Adam Love, Ph.D. ("Love") (Doc. 125). For the following reasons, the Court GRANTS IN PART Plaintiff's motion.

## Background

At the heart of this dispute is the Sunflower Army Ammunition Plant ("Plant"). The Army manufactured power and propellant munitions, and nitric and sulfuric acids at the Plant.

During its operation, spills and releases of propellant, heavy metals, nitrate compounds, and other pollutants contaminated various parts of the Plant property. Due to these activities, numerous areas of the property were determined to be heavily polluted.

In 1998, the Army determined it no longer needed the Plant. Sunflower sought to purchase the property with a vision to clean up the pollutants and develop the land. On August 3, 2005, Sunflower entered into an agreement with the Army to purchase the Plant. On the same day, Sunflower entered into a Remediation Services Agreement ("RSA") with the United States, which obligated Sunflower to purchase environmental insurance, secure the worksite, and perform certain remediation work. In exchange, the Army would pay Sunflower for the outlined remediation work. The Army and Sunflower codified the specific remediation work covered by the RSA into the "Remediation Plan."

As part of the project financing, Sunflower purchased PPL and Remediation Cost Containment ("RCC") insurance policies from ILU. Both policies were custom policies that were the result of negotiations between the parties. Generally, the PPL policy provides coverage for unknown, and certain known, pre-existing pollution conditions at the Plant and the RCC affords coverage for costs that exceed the Remediation Plan. There are numerous exclusions and endorsements to both policies. Relevant to this motion, the PPL policy contains a self-insured retention amount of $250,000 per pollution condition.

The dispute between the parties was triggered by a letter KDHE sent Sunflower. Sunflower believed KDHE was requiring it to perform certain remediation work and that work was covered by the PPL policy. ILU's interim coverage decision was that the PPL policy had not been triggered. As a result of that decision, Sunflower filed this two-count lawsuit for declaratory judgment and breach of contract.

ILU hired Love, an expert in environmental forensics, site characterization, remediation of contamination, and the movement of contamination through the environment to rebut the opinions of Sunflower's expert Timothy Stecher ("Stecher"). Love's expert report opines on several specific pollution conditions, project costs, what was required under the RSA, and applies the PPL policy's definition of pollution condition to the various conditions at issue. Love testified he does not make legal evaluations of insurance policies.

The Court determined, and the parties agree, the polices are unambiguous (Doc. 65). The issue in Phase I was whether certain pollution conditions at particular locations at the Plant were excluded from coverage under the PPL policy. The Court found none of the endorsements to the PPL Policy excluded coverage for those conditions (Doc. 65). Phase II concerns all other issues to determine whether ILU has a duty to defend and indemnify Sunflower under the PPL policy. The Court recently ruled on the parties' cross-motions for summary judgment (Doc. 168).

**Standard**

Under Kansas law,[1] an insurance policy constitutes a contract and the interpretation of a contract is a question of law. *AMCO Ins. Co. v. Beck,* 929 P.2d 162, 165 (Kan. 1996). Finding the policies are unambiguous, the court must take unambiguous language in its plain and ordinary sense. *Warner v. Stover,* 153 P.3d 1245, 1247 (Kan. 2007). Thus, "[i]f the terms of the contract are clear, there is no room for rules of construction, and the intent of the parties is determined from the contract itself." *Liggatt v. Emp'rs Mut. Cas. Co.,* 46 P.3d 1120, 1125 (Kan. 2002).

---

[1] The Court previously decided Kansas law applies in this case. *See* Order Den. Remand and Transfer (Doc. 22). Additionally, endorsements attached to both the PPL and the RCC policies dictate Kansas law applies to questions relating to the interpretation of the policies. *See* (Doc. 122-2 at 264 & 310). The parties do not dispute Kansas law applies.

3

The party seeking admission of expert testimony has the burden of establishing admissibility. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). To be admissible, expert testimony must be both relevant to a material issue and reliable. *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1120 (8th Cir. 2006). Under Federal Rule of Evidence 702, if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, so long as (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Finally, "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Larabee v. MM & L Int'l Corp.*, 896 F.2d 1112, 1116 n.6 (8th Cir. 1990) (quotation omitted).

However, in disputes such as this, construction of the terms and conditions of written contracts, including insurance policies, is an issue of law for the trial court to determine, not matters of fact insertable into the trial record through the Federal Rules of Evidence. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003) (noting "[t]he [c]onstruction of an insurance policy—the process of determining its legal effect—is a question of law for the court.") (quotation omitted).

## Discussion

Sunflower moves to exclude some of Love's opinions because it believes some opinions stray into the Court's province of determining issues of law, mainly contract interpretation. Sunflower argues portions of Love's report opines on what should be eligible for payment under the PPL policy, what costs should be covered by the RCC policy, and how the self-insured

4

retention should apply.  ILU argues the complained of opinions do not offer mere legal conclusions, but rather offer an analysis that will assist the fact finder in determining whether certain pollution conditions are eligible for coverage under the PPL policy.

**I.       Sunflower's motion as to Love's opinions that hinge on what the parties intended or expected the PPL or RCC policies to cover is granted in part.**

The first set of opinions Sunflower complains of are opinions 1, 4, 5, 7a, and 10b. Sunflower argues these opinions address whether particular remediation costs are eligible for payment under the PPL policy, a question of law.

Opinion 1 states "Mr. Stecher failed to assess the characteristics of the pollution conditions for the six work elements alleged by [Sunflower], nor did he determine if the associated costs are reasonably expected to be eligible for payment under the PPL Policy.  As a result, his assumption that the total costs he calculates for these six work elements are appropriate for submission to the PPL Policy has no basis." (Doc. 144-1 at 14-15).  This opinion seems to state that because Mr. Stecher assumed, for purposes of his report, that the pollution conditions would be covered by the PPL policy, it is flawed.  This opinion doesn't seem to state what is or is not covered by the PPL policy, it only points to an alleged flaw with Stecher's report.  Thus, as to this opinion, Sunflower's motion is denied.

The complained of portion of opinion 4 states "Of the $64M in total costs projected, only $15.8M has been incurred.  Of the $15.8M in incurred costs, information was not provided that indicates the portion of those costs that were part of the Remediation Services Agreement or previously submitted to the RCC Policy for payment.  Any portion of the $15.8M in incurred costs that were part of the Remediation Services Agreement or previously submitted to the RCC Policy would not then be expected to be eligible for coverage under the PPL Policy. (Doc. 144-1 at 15-16).  This opinion is essentially an argument ILU made in its Phase I motion for summary

5

judgment, that the PPL and RCC policies provide complementary coverage and if a cost is eligible for coverage under one policy, it is not covered by the other. This argument was rejected by the Court. This portion of the opinion gives a subjective interpretation of how the policies interact. Additionally, Love states what is "expected" to be eligible for coverage. As unambiguous policies, subjective intent of coverage is not considered in interpreting the contract and would not be helpful to the jury  Thus, the portion of Opinion 4 that begins with "Any portion of the $15M" is excluded. Sunflower's motion is GRANTED as to this item.

Opinion 5 states "Two of the three work elements from Mr. Stecher's projected costs, ACM Impacted Soil Remediation and SWMU 21 ACM-Impacted Soil Removal, involve work at buildings or locations that were part of the Remediation Services Agreement. Mr. Stecher has identified $11.8M in past costs and $16.3M in projected future costs, which should be considered an expansion of the Remediation Services Agreement and thus submitted to the RCC Policy and not the PPL Policy." (Doc. 144-1 at 16). Here, Love's opinion is on whether certain pollution conditions should be included within the RSA and eligible for coverage under the RCC Policy and not under the PPL policy. This opinion then includes an impermissible interpretation of the insurance policies. As to this opinion, Sunflower's motion is granted.

Opinions 7a and 10b are similar. Opinion 7a states "Work element 'ACM-Impacted Soil Remediation' is an expansion of existing excavation scopes included in the Remediation Services Agreement. As such, the costs associated with 'ACM-Impacted Soil Remediation' were intended to be covered under the RCC Policy, and not the PPL Policy. (Doc. 144-1 at 23 and 24-34). Opinion 10b states "Work element 'SWMU 21 ACM-Impacted Soil Remediation' is an expansion of scope for an existing excavation scope for SWMU 21 included in the Remedial Plan. As such, the costs associated with 'SWMU 21 ACM-Impacted Soil Remediation' are

intended to be covered under the RCC Policy, and not the PPL Policy. (Doc. 144-1 at 44 & 45-48).

These opinions seem to provide the subjective intent of the parties, what was "intended" to be covered. As explained above, given the polices are unambiguous, intent is not considered when construing the policies and the Court finds this opinion would not be helpful to the jury and is on an issue of law. Sunflower's motion is granted as to these two opinions.

**II.  Sunflower's motion on Love's opinions relating to how the self-insured retention should apply is granted in part.**

Sunflower next complains of Love's opinions 6a-b, 7b-c, 8a-b, 9a-d, 10a, and 11a-b, which generally cover how the $250,000 per pollution condition self-insured retention of the PPL policy should apply.

The PPL policy declaration states there is a self insured retention per pollution condition of $250,000. In § II.B the policy states "[t]he 'self-insured retention' shall apply to all 'claim(s)', 'remediation cost(s)', and 'legal defense expense(s)' arising from the same, continuous, repeated, or related 'pollution condition.'" (Doc. 122-2 at 248). A pollution condition is "the discharge, dispersal, release, escape migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, 'fungi', hazardous substances, hazardous materials, or waste materials, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater." (Doc. 122-2 at 251).

Determining the number of pollution conditions is important because it determines how many self-insured retentions Sunflower must satisfy before the policy coverage applies. Sunflower contends Love's opinions are that a single pollutant present at multiple buildings constitutes multiple pollution conditions even though pollution condition is defined to

7

encompasses multiple substances. Sunflower argues that Love's opinions on what is a pollution condition are directly contradicted by the plain language of the policy and the definition of pollution condition.

ILU argues Love's opinions do not state legal conclusions, but rather provide a framework for determining how many pollution conditions existed at the plant, which will in turn determine the number of self-insured retentions Sunflower will need to satisfy.

### A. Opinions as to whether certain contaminations are single or multiple pollution conditions are not impermissible legal conclusions.

The first set of opinions, 6a, 7b, 8a, 9a, 10a, and 11a, each address a specific contaminant and attempts to explain nuances within the contaminate that may make it multiple pollution conditions. Generally, Love opines that Stecher has defined pollution condition too broadly and that given the nature of the contaminant, more than one pollution condition may exist. For example, as to applied pesticides, Love opines that rather the broad category of "applied pesticides" as a pollution condition, each application of different pesticide chemicals is an independent pollution condition.

The Court finds Love's opinions on whether certain contaminants are singular or multiple pollution conditions is not a mere legal conclusion and may be helpful to the jury. An expert may offer an opinion if their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Sunflower's motion as to these opinions is denied.

### B. Opinions that state the self-insured retention is applied to individual locations (buildings, SWMUs, AOCs, or WSAs) is not supported by the language of the policy.

The next category of opinions, 6b, 7c, 8b, 9c, 9d, and 11b, each address a specific contaminant but state that given the number of locations this contaminant is located, the self-

insured retention cannot be met. For example, as to applied pesticides, Love opines that if the total clean up costs for applied pesticides is divided by the number of buildings (at least 130) where pesticide-impacted soil is expected, the self-retention cannot be met as to each building. What these opinions are generally implying is that a pollution condition is location specific and that for each location a specific contaminant is found, it is a new pollution condition. This analysis is not supported by the language of the declarations or the § II of the policy. Nowhere in the policy does it state that a pollution condition is location specific. This portion of Sunflower's motion is granted.

### C. Love's opinion 9b is not impermissible.

The last opinion Sunflower complains of his opinion 9b which generally states that Stecher's summary of costs for Hazardous/Universal/Special Waste Disposal is less than the self-insured retention amount. In reviewing the report, the Court does not see any part of this opinion that impermissibly interprets the contract. Generally, the report attacks Stecher's method of calculating cleanup costs and Love determines that his approach would yield a value less than the self-insured retention amount. The Court finds this opinion would be helpful for the jury to determine the ultimate issue in this case. Sunflower's motion as to this portion of Love's opinion is denied.

## Conclusion

For the reasons stated above, Plaintiff's motion to exclude (Doc. 125) is GRANTED IN PART.

**IT IS SO ORDERED.**

Date: March 16, 2018            /s/ Greg Kays
                                GREG KAYS, CHIEF JUDGE
                                UNITED STATES DISTRICT COURT